487 A.2d 933

**The SUTTER CORPORATION, Appellant,**

**v.**

**TRI–BORO MUNICIPAL AUTHORITY.**

Superior Court of Pennsylvania.

Argued Feb. 15, 1984.

Filed Jan. 25, 1985.

218

Thomas M. Marsilio, Hazelton, for appellant.

Jack M. Stover, Harrisburg, for appellee.

Before CAVANAUGH, CIRILLO and WATKINS, JJ.

WATKINS, Judge:

This case comes to us on appeal from the Court of Common Pleas of Susquehanna County and involves plaintiff-appellant's appeal from a decision of the court below which found in favor of the defendant-appellee and held that it was entitled to retain the sum of $59,300 in liquidated damages on its contract with plaintiff. Defendant had filed an Answer and Counterclaim to plaintiff's Complaint. The total contract price was $829,071.89.

Plaintiff, a contractor, and defendant, a municipal authority, entered into a written, public construction contract for the construction of an upgraded sewage treatment plant and pumping station on May 21, 1974. Defendant gave plaintiff a "Notice to Proceed" with the work on July 1, 1974. Article II of the Contract specifically provided that work was to be completed within 365 days of the date indicated in the Notice to Proceed. It further provided that in the event that the contractor failed to complete the work during that period that defendant was entitled to retain the

sum of $200 per day, not including Sundays and other legal holidays, as liquidated damages for each day the completion of the work was delayed. Plaintiff did request and received from defendant one extension of time for completion of the work. Said extension was for 125 days moving the contract completion date to October 31, 1975. The court below held that plaintiff did not complete the work until December 1, 1976 when defendant's engineers certified the project as complete.

Between December of 1975 and December 1, 1976 defendant's engineer (The firm of Gannett, Fleming, Corddry and Carpenter) conducted numerous inspections and mechanical performance tests of plaintiff's work. Extensive listings of deficiencies were found in plaintiff's contract performance. These deficiencies were acknowledged by plaintiff's personnel as late as November 15, 1976.

Financing for defendant's project was by a combination of grants and loans from the Farmers Home Administration, the Environmental Protection Agency, the Department of Environmental Resources and the Appalachian Regional Commission. Because full financing of such projects does not become available until the project is complete defendant had to borrow funds for the project from a private lending institution at an annual interest rate of 6%. The financing from Farmer's Home Administration was at an annual interest rate of %5. Thus, the delay in the completion of the project resulted in defendant being unable to reduce its interim borrowing resulting in excess interest charges. The excess interest charges amounted to $14,000 with regard to the EPA grant and $6,490 per year regarding the Farmer Home Administration financing. In addition the delay resulted in additional engineering fees over and above those originally anticipated. Defendant paid Gannett $42,052.59 over and above the anticipated fee due to plaintiff's delay in completing the project.

As a result of plaintiff's delay defendant assessed its liquidated damages for 296.5 days at $200 per day or $59,300. The matter was tried non-jury by the court below after which the court below awarded defendant the sum of

$59,300 in liquidated damages as per the written contract. In reaching its decision the court made 99 findings of fact in which it found that plaintiff did not complete the project on time and that this delay resulted in damages to defendant. Plaintiff then appealed to our Court.

■ Plaintiff does not argue that it completed its work on time. It does argue that it "substantially completed" its work on December 12, 1975 and points out that defendant began treating sewage after that date. The engineer's completion certificate, however, was not issued until December 1, 1976 when all of the deficiencies had been corrected. The contract provided that "the work shall be completed within 365 calendar days" of the Notice to Proceed. Liquidated damages were provided for "any work that shall remain uncompleted" after the time which had been agreed upon by the parties. The plain language of the contract needs no interpretation. Plaintiff simply did not complete the work until December 1, 1976. The court below did not err in so finding. See *Bobali Corp. v. Tamapa Co.*, 235 Pa.Superior Ct. 1, 340 A.2d 485 (1975). This finding is supported by the fact that the funding agencies did not treat the work as "complete" until all the deficiencies were corrected. We find that the plain language of the contract required that the work be completed on October 31, 1975 (including the 125 day extension) and it was not "completed" until December 1, 1976.

■ Plaintiff argues that because the deficiencies were listed on a "punch list" by the engineer that it was proven that the project was "complete" on December 12, 1975 and that the "punch list" was for the purpose of listing minor deficiencies. Of interest is the fact that the "minor deficiencies" were not corrected until December 1, 1976. We hold that the method of listing the deficiencies (the "punch list") did not require the court below to find, as a matter of law, that the work was "complete" on December 12, 1975 as argued by plaintiff. Such a determination remained one of fact and sufficient evidence was produced during the trial of the case to permit the court to resolve this factual dispute in favor of the defendant.

■ Next, plaintiff argues that the court below erred when it failed to consider the "interdependency of the five contractors in relation to the delay of all of them". Plaintiff argues that there were other contractors involved with this project and that it was unfair to plaintiff for defendant to assess liquidated damages on plaintiff and not the others. A review of the record demonstrates a continuous pattern of delay and untimely work by plaintiff. Although some of plaintiff's delay can be attributed to the untimely work of one of the subcontractors (Rado) which had the contract to do the mechanical work, plaintiff did not seek to join Rado to the instant action. Thus, we agree with the lower court when it states that it would be inappropriate for the court to assess liquidated damages against parties who are not part of the instant action. The only matter at issue here is the contract between plaintiff and defendant and its clear and unambiguous terms call for the assessment of liquidated damages against plaintiff if the work was not completed on time. As noted above there was sufficient evidence for the court below to find as a fact that the work was not completed until December 1, 1976 thereby subjecting plaintiff to an assessment of damages against it as set forth in the contract. There is no requirement that the trial court attempt to apportion liquidated damages among other contractors not parties to this action. To so hold would make such damages not liquidated.

■ Next, plaintiff argues that the contract provision calling for liquidated damages is unenforceable as unconscionable. We do not agree. In Pennsylvania, liquidated damage clauses have been universally accepted as a necessary part of the law governing construction contracts. See *In Re: Plywood Co. of Pa.*, 425 F.2d 151 (3rd Cir.1970). In this case plaintiff was an experienced contractor which dealt with defendant at arm's length. The record reveals that its officers understood the contract. Plaintiff argues that the contract is "unconscionable" as applied to this case. It argues that defendant is being permitted to refuse paying for work due to minor, inconsequential deficiencies. We do not agree. The seven areas of the work which remained

unfinished were: the control building, the treatment units, outside piping, landscape work, fencing, a pumping station, and the allowance for laboratory tests. These unfinished areas were found by the trial court to be more than minor, inconsequential, or unsubstantial deficiencies. Moreover, the funding agencies would not release the full funding for the project until the deficiencies were corrected. We find that the court below did not err in finding as it did and that the contract was not unconscionable.

■ Finally, plaintiff argues that the court below committed reversible error when it admitted into evidence testimony as to actual damages incurred by defendant. As a general rule of law it is not necessary to show any actual damages in order to recover liquidated damages pursuant to a contract providing for liquidated damages. *5 Corbin, Contracts Section 1062.* The evidence produced at trial indicated that defendant did in fact suffer substantial actual damages which could not have been accurately projected at the time the contract was signed. Plaintiff argues that it was prejudicial to admit such evidence. However, it points to no place in the record where it objected to the introduction of this testimony. Furthermore, it stipulated to the admission into the record of the deposition of Walter W. Shearer whose testimony was solely related to actual damages. Moreover, defendant argues that testimony relative to actual damages was introduced in order to demonstrate the inability to form a precise determination of actual damages. Defendant points to the fact that it was impossible to calculate in advance the precise amount of the inspection costs associated with the contract and that it is impossible to calculate in strict monetary terms the countless hours of time put in by the defendant's members and the problems and frustrations they faced with the unfinished sewage treatment facility. Thus, defendant argues that it was necessary to introduce this evidence in order to show that the liquidated damage provision of the contract was appropriate.

■ Plaintiff also cites the case of *Mammarella v. Rugeriis,* 102 Pa.Superior Ct. 132, 156 A. 549 (1930) in support

of its proposition that it was prejudicial to allow introduction of evidence of actual damages in a case involving liquidated damages.  In *Mammarella*, however, the amount of actual damages was less than the liquidated damages and the matter was heard by a jury.  The court held in that case that the trial court properly excluded evidence of actual damages because the introduction of such evidence would tend to confuse the jury.  In our case the amount of actual damages (to the extent that they could be calculated) was greater than the amount of liquidated damages.  Moreover, the court awarded only the liquidated damages set forth in the contract indicating that it was not confused by the evidence on actual damages.  Because plaintiff never objected to this evidence and because we find that its introduction had no discernable effect on the outcome of the case we hold that the court below did not commit reversible error in admitting it.

Order affirmed.[1]

1.  Because we are affirming the lower court's decision on the merits of the case we will deny the Appellee's Motion to Quash the appeal for failure to file exceptions to the order of the lower court.  We note that certain delays occurred in entering the judgment of record which was not done until February 17, 1984.  We also note that appellant's counsel has requested the opportunity to brief the issue regarding the failure to file exceptions.  Our disposition of the case resolves the matter and removes the necessity of filing any such additional brief.